O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STONEVILLE USA, INC., <br><br> Plaintiff, <br> v. <br> PENTAL GRANITE AND MARBLE, INC.; PETER PENTAL; STYLENQUAZA LLC; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 2:12-cv-4962-ODW(JCGx) <br><br> **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [22]** |

Pending before the Court is Defendant Pental Granite and Marble, Inc.'s Motion to Dismiss Plaintiff Stoneville USA, Inc.'s First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]  (ECF No. 22.)  For the following reasons, Pental's Motion is **GRANTED IN PART**.

## I.   FACTUAL BACKGROUND

Stoneville imports, distributes, and sells man-made-stone products, including Quartz products.  (FAC ¶ 16.)  Stoneville entered into an alleged agreement with Pental in July 2009, where Pental would provide Stoneville a Chroma Quartz product on a consignment basis, and Stoneville would remit payment for the sold product by the end of the following month after the product was sold; no other relevant terms were specified.  (*Id.* ¶ 20.)  This relationship continued for over two years, during which Pental did not require Stoneville to purchase a minimum number of units of the product, and did not indicate anything to the contrary.  (*Id.* ¶ 22.)  Also during this

---

[1] Having carefully considered the papers filed in support of and in opposition to this Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

period, Stoneville purchased samples of products from Pental to market and advertise in the greater Los Angeles region. (*Id.* ¶ 23.) Stoneville alleges that it spent "considerable time, money, and effort marketing and advertising" Chroma Quartz in the Los Angeles region, and that these efforts created a greater demand for Chroma Quartz generally, and not just for Stoneville's brand. (*Id.*)

Further, during this time period, Stoneville alleges that on multiple occasions, it discussed with Pental the ongoing nature of their relationship. (*Id.* ¶ 25.) However, in January 2012, Pental "suddenly and without notice" modified their arrangement and required an upfront payment of $1.2M–$1.5M within a month, and minimum monthly orders of 20 containers of product thereafter. (*Id.* ¶ 27.) Pental indicated that it intended to sell Chroma Quartz itself in the Los Angeles region if Stoneville was unable to fulfill the new requirements. (*Id.*) Stoneville was unable to meet these requirements, and Pental stopped supplying Chroma Quartz to Stoneville, allegedly causing damage to Stoneville's company, customers, and business. (*Id.* ¶ 28.)

## II. LEGAL STANDARD

Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement—to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003); Fed. R. Civ. P. 8(a)(2). For a complaint to sufficiently state a claim, its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While specific facts are not necessary so long as the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Iqbal*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," but does not go so far as to impose a "probability requirement." *Id.* Rule 8 demands more than a complaint that is merely consistent with a defendant's liability—labels and conclusions, or formulaic recitals of the elements of a cause of action do not suffice. *Id.* Instead, the complaint must allege sufficient underlying facts to provide fair notice and enable the defendant to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 566 U.S. at 679.

When considering a Rule 12(b)(6) motion, a court is generally limited to the pleadings and must construe all factual allegations in the complaint as true and in the light most favorable to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be blindly accepted as true by the court. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Yet, a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts" supporting plaintiff's claim for relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

Stoneville's FAC alleges seven causes of action against Pental: (1) breach of oral contract; (2) breach of covenant of good faith and fair dealing; (3) breach of implied contract; (4) unjust enrichment for supplies received; (5) unjust enrichment

for the benefit of marketing payments; (6) common counts of work and labor; and (7) unfair business practices.[2] Pental now moves to dismiss all causes of action. The Court considers each in turn.

### A.  First cause of action – breach of oral contract

To state a claim for breach of contract under California law, a plaintiff must plead: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) resulting damages. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

As to the existence of a contract, there must be binding obligations on each party in order for a contract to exist; without such a "mutuality of obligation, the agreement lacks consideration and no enforceable contract has been created." *Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981).

In this case, the Court finds no mutual obligation within the terms of the oral agreement. According to the oral agreement, Stoneville was not required to buy, store, or sell any amount of product from Pental. Nor was it obligated to buy product exclusively from Pental. Similarly, Pental was not required to provide any amount of product to Stoneville. At best, the parties had a procedural arrangement, which would apply if any consignment sales occurred. (FAC ¶ 20.)

Stoneville argues in its Opposition that Pental was required to provide Chroma Quartz products "on a consignment basis, no matter the number of units requested," and that Stoneville was "obligated to create demand for the product." (Opp'n 7.) But Stoneville did not plead these terms in its FAC—and in fact, these terms contradict the FAC. The FAC specifically defines the terms of the agreement as: (1) "Pental . . . would start providing [Stoneville] Chroma Quartz materials on a consignment basis," and (2) Stoneville would "remit[] payment for the material by the end of the following

---

[2] The FAC also alleges a cause of action for tortious interference with contract solely against Stylenquaza LLC. But on July 13, 2012, the parties stipulated to the dismissal of Stylenquaza. (ECF No. 23.)

month after it was sold." (FAC ¶ 20.) And more importantly, the FAC then states, "No additional relevant terms of the contract were specified." (*Id.*)

Because there is no mutuality of obligation under the oral agreement, it is not a contract. The Court need not discuss any other elements for the formation of an oral contract. Therefore, the Court **GRANTS** Pental's Motion with respect to the first cause of action.

### B. Third cause of action – breach of implied contract

Implied contracts consist of "obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Silva v. Providence Hosp. of Oakland*, 14 Cal. 2d 762, 773 (1939). The existence of an implied contract is determined by the parties' conduct. *Id.* at 774.

Here, the FAC alleges that Stoneville and Pental had a good, working relationship over a two-year period. (FAC ¶¶ 22, 25.) The FAC also suggests that a substantial amount of product and money were exchanged between the parties. (*Id.* ¶¶ 22–23, 25.) At this stage in the case, the Court finds it plausible that despite the lack of an oral agreement, there was a mutual obligation based on the parties' conduct—and therefore, an implied contract.

Further, the Court finds that because a substantial amount of product and money were exchanged between the parties for over two years, there is a plausible likelihood that: Stoneville performed under the terms of the implied contract; Pental breached the implied contract by unilaterally and unreasonably modifying the implied contract; and Stoneville was damaged because it could no longer sell Chroma Quartz into the market that it developed. And thus, Stoneville has properly pleaded a cause of action for breach of implied contract.

Pental argues that there cannot be an implied contract where there is an express agreement covering the same subject matter. *Lance Camper Mfg. Corp. v. Republic Indemnity Co. of Am.*, 44 Cal. App. 4th 194, 203 (1996). But the Court finds this argument meritless in light of its conclusion that no oral contract existed.

Accordingly, the Court **DENIES** Pental's Motion with respect to the third cause of action.

### C. Second cause of action – breach of covenant of good faith and fair dealing

A covenant of good faith and fair dealing is implied in every contract. *Chodos v. West Publishing Co.*, 292 F. 3d 992, 996 (9th Cir. 2002). Under California law, where a plaintiff's allegations of breach of the covenant of good faith rely on the same facts and seek the same damages or relief already claimed in a companion contract cause of action, they can be regarded as superfluous. *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370 (1999). "Breach of the implied duty of good faith and fair dealing involves something more than breach of the contractual duty itself," it involves unfair dealing that frustrates and disappoints the reasonable expectations of the other party. *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 852 (C.D. Cal. 2004). And because claims involving breach of the implied covenant are generally based on the same facts as a breach of contract claim, a court must determine if the two claims are distinguishable based on the same facts; and if they cannot be distinguished, then "the natural conclusion is that they are duplicative." *Celador*, 347 F. Supp. 2d at 853.

Here, Pental merely asserts that the breach of the covenant of good faith and fair dealing is duplicative of the breach of contract claim. But this assertion misses the mark. Stoneville alleges conduct by Pental that runs contrary to the spirit of their arrangement—such as Pental modifying the terms to essentially take over the Los Angeles market, developed by Stoneville, for Chroma Quartz. (FAC ¶¶ 24, 27.) At this stage, it is unclear whether this conduct as alleged breaches the implied contract, but the Court finds that it is plausible that it would breach the covenant of good faith and fair dealing. Thus, the Court **DENIES** Pental's Motion with respect to the second cause of action.

/ / /

/ / /

### D. Fourth and fifth causes of action – unjust enrichment

There is a split of authority in California whether unjust enrichment is a cause of action, regardless of how it is characterized.[3] One line of cases identifies the elements of an unjust enrichment claim as one where there is (1) the receipt of a benefit, and (2) the unjust retention of the benefit at the expense of another. *Cont'l Cas. Co. v. Enodis Corp.*, 417 Fed. App'x 668, 670 (9th Cir. 2011). The other line of cases identifies unjust enrichment as a "general principle" and not a cause of action. *Manantan v. Nat'l City Mortg.*, No. C-11-00216 CW, 2011 U.S. Dist. LEXIS 82668, at *14–16 (N.D. Cal. July 28, 2011).

This court follows the latter; unjust enrichment is not a separate cause of action. *Thongnoppakun v. Am. Express Bank*, No. CV11-08063-ODW(MANx), 2012 U.S. Dist. LEXIS 25581, at *5 (C.D. Cal. Feb. 27, 2012). Therefore, the Court **GRANTS** Pental's Motion with respect to the fourth and fifth causes of action.

### E. Sixth cause of action – common counts of work and labor

Stoneville's sixth claim alleges a cause of action framed as a common count for work and labor performed by Stoneville. A common count is not a specific cause of action, but is instead a "simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness." *Mcbride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004). When a plaintiff pleads a common count as an alternative way of seeking the same recovery demanded in another cause of action—and it is based on the same facts—the common count should be dismissed if the other cause of action is dismissed. *Id.*

The Court finds that Stoneville's common count claim is simply an unjust enrichment claim. And as discussed above, unjust enrichment is not a cause of action and must be dismissed. Thus, the Court **GRANTS** Pental's Motion with respect to the sixth cause of action.

---

[3] E.g., "unjust enrichment for supplies received" or "unjust enrichment for the benefit of marketing payments." (FAC 11, 12.)

### F. Seventh cause of action – unfair business practices

California's unfair competition law prohibits any unlawful, unfair, or fraudulent business act. Cal. Bus. & Prof. Code § 17200. A breach of contract may form the predicate for a section 17200 claim, provided it also constitutes unfair conduct. *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008). Stoneville's FAC suggests that Pental's practice was unfair because it stopped supplying Chroma Quartz without notice and is attempting to take over the demand for the product created by Stoneville. (FAC ¶¶ 63–64.)

Pental argues that Stoneville's pleading is too conclusory. The Court disagrees, and instead finds that Stoneville was operating a business that allegedly relied on Stoneville's shipments of Chroma Quartz. (FAC ¶¶ 27–28.) And because Stoneville could not comply with Pental's modified requirements of an upfront payment and minimum order quantities, Pental swooped in and usurped the Los Angeles Chroma Quartz market. (*Id.*)

But the Court notes that the FAC does not allege unfair competition under the unlawful or fraudulent prongs; Stoneville's allegations are solely based on the unfair prong. Accordingly, the Court **DENIES** Pental's Motion with respect to the seventh cause of action.

### IV. CONCLUSION

For the reasons discussed above, Stoneville's first, fourth, fifth, and sixth causes of action are **DISMISSED WITH PREJUDICE**. Pental shall answer Stoneville's remaining causes of action within 14 days of this order.

**IT IS SO ORDERED.**

September 18, 2012

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**